UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STACY LYNN COYER,

                Plaintiff,                      Case No. 2:18-cv-11072
                                                  District Judge Mark A. Goldsmith
v.                                              Magistrate Judge Anthony P. Patti

COMMISSIONER OF
SOCIAL SECURITY
ADMINISTRATION,

                Defendant.

_____/

**<u>REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT (DE 11), GRANT DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT (DE 12) and AFFIRM THE
COMMISSIONER'S DECISION</u>**

**I.    RECOMMENDATION**:  For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment (DE 11), **GRANT** Defendant's motion for summary judgment (DE 12),

and **AFFIRM** the Commissioner's decision.

**II.    REPORT**

      Plaintiff, Stacy Lynn Coyer, brings this action under 42 U.S.C. § 405(g) for

review of a final decision of the Commissioner of Social Security

("Commissioner") denying her applications for disability insurance (DI) and

supplemental security income (SSI) benefits.  This matter is before the United

States Magistrate Judge for a Report and Recommendation on Plaintiff's motion for summary judgment (DE 11), the Commissioner's cross-motion for summary judgment (DE 12), and the administrative record (DE 9).

### A.    Background and Administrative History

Plaintiff alleges her disability began on November 16, 2013, at the age of 39. (R. at 169, 176.)  In her disability report, she lists several physical conditions (*e.g.*, pain and nerve damage) as limiting her ability to work.  (R. at 231.)  Her applications were denied on September 30, 2014.  (R. at 88-121.)

Plaintiff requested a hearing by an Administrative Law Judge ("ALJ").  (R. at 122-123.)  On October 20, 2016, ALJ Sarah Zimmerman held a hearing, at which Plaintiff and a vocational expert (VE), Susan Lion, testified.  (R. at 42-87.) On March 10, 2017, ALJ Zimmerman issued an opinion, which determined that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 15-41.)

Plaintiff submitted a request for review of the hearing decision/order.  (R. at 165-166.)  However, on February 8, 2018, the Appeals Council denied Plaintiff's request for review.  (R. at 1-7.)  Thus, ALJ Zimmerman's decision became the Commissioner's final decision.

Plaintiff timely commenced the instant action on April 3, 2018.

### B.    Plaintiff's Medical History

The administrative record contains approximately 1,040 pages of medical records, which were available to the ALJ at the time of her March 10, 2017 decision.  (R. at 41, 342-1381 [Exhibits 1F-45F].)  These materials will be discussed in detail, as necessary, below.

### C.    The Administrative Decision

Pursuant to 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), at **Step 1** of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 16, 2013, the alleged onset date.  (R. at 20-21.)  At **Step 2**, the ALJ found that Plaintiff had the following severe impairments:  degenerative disc disease (DDD) of the cervical and lumbar spine, right lateral epicondylitis status post extensor carpi radialis brevis (ECRB) debridement, right radial tunnel syndrome status post release, allergic rhinitis, posttraumatic stress disorder (PTSD), anxiety, and depression.  (*Id*. at 21.)  At **Step 3**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  (*Id*. at 21-24.)  **Between Steps 3 and 4** of the sequential process, the ALJ evaluated Plaintiff's residual functional capacity ("RFC")[1] and determined

---

[1] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec*., 276 F.3d 235, 239 (6th Cir. 2002).

that Plaintiff had the RFC to "lift and/or carry up to 10 pounds frequently and up to

20 pounds occasionally[,]" with certain other exertional, postural, manipulative,

environmental, and mental health limitations. (*Id*. at 24-31.) At **Step 4**, the ALJ

determined that Plaintiff was unable to perform any past relevant work. (*Id*. at 31-

32.) At **Step 5**, considering Plaintiff's age, education, work experience and RFC,

the ALJ determined that there were jobs that existed in significant numbers in the

national economy that Plaintiff could perform, such as a general office clerk, an

assembler performed at a bench or table, and a packager performed at a bench or

table. (*Id*. at 32-33.) The ALJ therefore concluded that Plaintiff had not been

under a disability, as defined in the Social Security Act, from November 16, 2013,

through the date of the decision. (*Id*. at 33.)

### D. Standard of Review

The District Court has jurisdiction to review the Commissioner's final

administrative decision pursuant to 42 U.S.C. § 405(g). When reviewing a case

under the Social Security Act, the Court "must affirm the Commissioner's decision

if it 'is supported by substantial evidence and was made pursuant to proper legal

standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009)

(quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see

also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as

to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under

this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA [Social Security Administration] fails to follow its own regulations and where that error prejudices

a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### E.     Analysis

Plaintiff contends that the ALJ erred in her assessment of Plaintiff's RFC, for various reasons.  (DE 11 at 6-9.)  The Commissioner contends that "substantial evidence supports the ALJ's decision."  (DE 12 at 6-17.)

### 1.     Exertional limitations

The ALJ determined that Plaintiff's exertional limitations included lifting and/or carrying up to 10 pounds frequently and up to 20 pounds occasionally.  (R. at 24.)  These are consistent with the lifting and carrying limitations of light work. *See* 20 C.F.R. § 404.1567(b) ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.").

In support of her argument that she "cannot lift 20 pounds occasionally[,]" Plaintiff claims that the ALJ did not take into consideration the August 19, 2014 electromyogram report, which reflects:  **(a)** Plaintiff's report of right arm numbness and weakness, as well as "pain and swelling of the arm with limitation in use from the pain[,]" seemingly for three days, which followed having lifted 20 pound items; and, **(b)** Dr. Khan's impression that "[b]ased on the history that this all started a day after being involved in heavy strenuous activity, this may be

relevant to stretch injury of the brachial plexus." (DE 11 at 6, R. at 682-683.)

However, the ALJ twice cites this electromyogram report in the RFC discussion.

(DE 11 at 6; R. at 25, 27.) More to the point, even though Plaintiff has cited one

piece of evidence that she "injures herself when lifting 20 pounds . . . [,]" this does

not obligate the Commissioner to conclude that Plaintiff "cannot lift 20 pounds

occasionally." (DE 11 at 6.) Support for the ALJ's lifting limitation is found in

records that *post-date* Plaintiff's September 29, 2014 right lateral epicondylitis-

debridement (ECRB debridement) (R. at 859), and August 27, 2015 right radial

tunnel release (R. at 857), such as:

- Dr. Taha's December 17, 2014 notes, which reflect Plaintiff's report that she "has been doing quite well from the elbow standpoint . . . [,]" and a physical examination revealing "full range of motion, flexion/extension, and pronation/supination of the elbow." (R. at 839.)

- December 23, 2014 physical therapy discharge notes, which note that Plaintiff reports "80 percent improvement since beginning physical therapy[,]" and that "she is able to use the arm normally but it tires quickly[.]" (R. at 981-982.)

- Dr. Taha's July 1, 2015 and August 12, 2015 notes that examination of her right elbow "shows no pain over the lateral epicondyle at all[,]" and that "shows that she has no pain over the lateral epicondyle." (R. at 834, 831)

- Nurse Practitioner Richards' October 28, 2015 note that Plaintiff "has intact sensation in the median, ulnar, and radial nerve distributions[,]" as well as "good wrist extension and flexion." (R. at 825)

- Dr. Dardas's April 13, 2016 motor examination, which revealed "5 MRC strength in the proximal and distal muscle groups in the upper and lower extremities,"[2] and "normal muscle bulk and power . . . [,]" and a deep tendon reflexes examination, which revealed "[b]iceps, triceps, brachioradialis, patella and ankle reflexes are grade 2."[3]  (R. at 1278.)

Each of these records was expressly cited by the ALJ.  (*See* R. 27-28.)  In addition, the ALJ assessed the manipulative limitations of frequently reaching and handling with her dominant right upper extremity.  (R. at 24.)

"The Secretary and not the court has the power to weigh all the evidence and resolve significant conflicts in the testimony."  *Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1227 (6th Cir. 1988) (citing *Myers v. Richardson,* 471 F.2d 1265, 1267–68 (6th Cir.1972)).  Here, Plaintiff argues that "there is evidence in the record that [she] injures herself when lifting 20 pounds . . . ." (DE 11 at 6.)  However, "[t]he Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citing *Mullen v. Bowen,* 800

---

[2] "MRC strength" seems to refer to the Medical Research Council Manual Muscle Testing scale, regarding which a grade of "5" represents "[m]uscle activation against examiner's full resistance, full range of motion[.]"  *See* https://www.ncbi.nlm.nih.gov/books/NBK436008/ (last visited July 9, 2019).

[3] A deep tendon reflex grade of 2+ means "a brisk response; normal[.]"  *See* https://www.ncbi.nlm.nih.gov/books/NBK396/ (last visited July 9, 2019).

F.2d 535, 545 (6th Cir.1986)).  To the extent Plaintiff asks the Court to re-weigh the evidence, it cannot do so.

### 2.    Mental health limitations

The ALJ acknowledged that Plaintiff's severe impairments included PTSD, anxiety, and depression, although she also concluded that Plaintiff's mental impairments did not meet or medically equal the criteria of listings 12.04, 12.06, and 12.15.  (R. at 21-24.)  Still, the ALJ determined that Plaintiff "may have *frequent* interaction with supervisors and coworkers[,]" "may have *occasional* interaction with the public[,]" and "can tolerate *frequent* changes in a routine work setting."  (R. at 24 (emphases added).)  These limitations were based on Plaintiff's moderate limitations in "interacting with others[,]" and "adapting or managing oneself."  (R. at 31.)

Apparently challenging the adequacy of these limitations, Plaintiff points to:

- Therapist Anne Olsen's December 1, 2014 note that Plaintiff "reports she just came from her physical therapy appointment. She has continued with very high levels of pain."  (R. at 725.)

- Olsen's December 8, 2014 note that Plaintiff "says her mind is always full and racing thoughts are an issue[,]" and "has been trying to keep herself busy but is not leaving the house much." (R. at 725.)

- Olsen's December 16, 2014 note that Plaintiff "states she has been trying to stay busy working on projects in her home but the result is that she has upset her sleep/wake cycle[,]" and "suffers physically and her pain levels are high."  (R. at 724.)

- Olsen's December 22, 2014 note that Plaintiff "has a membership to the Y for one month but finds that she lacks even the basic level of energy to get there."  (R. at 724.)

- Dr. Raval's January 13, 2015 psychiatric evaluation / consultation note, which highlights more than 20 signs, symptoms and mental status examination findings then-exhibited by Plaintiff.  (R. at 721.)

- Olsen's April 14, 2015 note that Plaintiff "is having some difficulty getting her daily routine stabilized."  (R. at 716.)

- A November 16, 2015 letter from Olsen, which indicates that Plaintiff had "experienced a very significant episode of PTSD flare-up[,]" and "[a]s yet[,] we are unable to reliably detect the kinds of triggers that set off these episodes."  (R. at 821.)

(DE 11 at 6-7.)

Preliminarily, it is not clear to what Plaintiff refers when she states, "[t]his is not considered by the ALJ in her decision."  (DE 11 at 7.)  In fact, the ALJ expressly cited the January 2015 psychiatric evaluation / consultation note within the RFC discussion.  (R. at 28, 721.)  Then, the ALJ cited "subsequent medication reviews" that "lacked significant findings."  (R. at 28, 811, 814, 816, 935, 1252, 1269.)  Moreover, the ALJ's review of the opinion evidence makes express citation to several opinions from treating psychiatrist Dr. Raval and treating therapist Olsen:

- Olsen and Raval's October / November 2014 clinical assessment, which rated her Global Assessment of Functioning (GAF) score as 45 (R. at 728.)[4]

- Olsen's October 8, 2015 letter to the SSA, which noted, *inter alia*, that Plaintiff "continues to struggle with her intense anxiety as well as the effects of her history of trauma[,]" and her "medical symptoms seriously limit her ability to follow through with any changes or activity that would usually help her regain some ground in better functioning." (R. at 809.)

- Olsen's March 7, 2016 letter to the SSA, which noted that Plaintiff's "level of functioning emotionally and medically is deteriorating." (R. at 1231.)

---

[4] "GAF is a clinician's subjective rating, on a scale of zero to 100, of an individual's overall psychological functioning." *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 503 n.7 (6th Cir. 2006). "'A GAF of 41 to 50 means that the patient has serious symptoms ... OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). A GAF rating of 51 to 60 signals the existence of moderate difficulty in social or occupational functioning.'" *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 276 (6th Cir. 2009) (quoting *Edwards v. Barnhart,* 383 F.Supp.2d 920, 924 n.1 (E.D. Mich. 2005) (Friedman, C.J., *accepting and adopting report and recommendation of* Pepe, M.J.)). Nevertheless, "the Commissioner has declined to endorse the [Global Assessment Functioning] score for use in the Social Security and [Supplemental Security Income] disability programs, and has indicated that [Global Assessment Functioning] scores have no direct correlation to the severity requirements of the mental disorders listings." *DeBoard v. Comm'r of Soc. Sec.*, 211 F. App'x 411, 415 (6th Cir. 2006) (quoting *Wind v. Barnhart*, 133 F. App'x 684, 692 n.5 (11th Cir. 2005) (internal quotation marks omitted). "Accordingly, [the Sixth Circuit has] affirmed denials of disability benefits where applicants had Global Assessment Functioning scores of 50 or lower." *DeBoard*, 211 F. App'x at 415 (referencing *Smith v. Comm'r of Soc. Sec.,* No. 02–1653, 2003 WL 22025046, 74 F.App'x 548 (6th Cir. Aug. 27, 2003) (Global Assessment Functioning score of 48); *Nierzwick v. Comm'r of Soc. Sec.,* 7 F. App'x 358 (6th Cir. 2001) (Global Assessment Functioning score of 35); *Thurman v. Apfel,* 211 F.3d 1270 (6th Cir. 2000) (Global Assessment Functioning score of 50)).

- Olsen's June 30, 2016 letter to the SSA, which noted "a significant decline that continues persistently." (R. at 1250.)

- Olsen and Raval's October 17, 2016 letter to the SSA, which reflects that they "are not seeing any significant improvement in symptom levels[,] especially with anxiety." (R. at 1275.)

- Olsen and Raval's October 17, 2016 mental RFC assessment, which rated Plaintiff as "not significantly limited" in 2 areas, "moderately limited" in 11 areas, and "markedly limited" in 7 areas. (R. at 1271-1273.)

- Olsen's November 28, 2016 letter to the SSA, which ultimately concludes: "we don't see that she can return to the work force while trying to live with her various diagnoses." (R. at 1369.)

(R. at 29-30.) To the extent Plaintiff intended to argue that the ALJ did not consider Olsen's April 14, 2015 progress note or November 16, 2015 letter to the SSA (R. at 716, 821), the ALJ need not expressly discuss each piece of evidence in her decision. *Bailey v. Comm'r of Soc. Sec.*, 413 F.App'x 853, 855 (6th Cir. 2011) ("But [an ALJ] is not required to analyze the relevance of each piece of evidence individually. Instead, the regulations state that the decision must contain only 'the findings of facts and the reasons for the decision.'") (quoting 20 C.F.R. § 404.953); *Kornecky v. Comm'r of Soc. Sec.*, 167 F.App'x 496, 508 (6th Cir. 2006) ("'[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.'") (quoting *Loral Defense Systems–Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir. 1999)).

In addition, Plaintiff takes issue with the ALJ's interpretation of these opinions as inconsistent with "Dr. Raval's own medication reviews."  (R. at 30, DE 11 at 7.)  Yet, the ALJ expressly cited the following when discounting Olsen's and Raval's opinions as inconsistent:

- Dr. Raval's June, August, October, and December 2015, and May and September 2016 medication reviews / follow ups, each of which indicates no suicidal ideations or psychotic symptoms noted and that Plaintiff "seems to be able to take care of activities of daily living *fairly well*[.]"  (R. at 811, 814, 816, 935, 1252, 1269.)

(R. at 30 (emphasis added).)  The Court agrees with the Commissioner that Dr. Raval's checkmark signifies that Plaintiff "can take care of activities of daily living fairly well."  (DE 12 at 10-11.)  Perhaps, as Plaintiff claims, Dr. Raval's notes about her activities of daily living (ADLs) "could be interpreted any number of ways."  (DE 11 at 7.)  Maybe so; but it is not for the Court to now re-interpret these notes in a way that favors her position.  At the very least, Dr. Raval's medication reviews / follow ups on the issue of ADLs may be viewed as inconsistent with the dire outlook presented in her providers' letters to the SSA.

In fact, even if not expressly cited by the ALJ, Plaintiff herself has alerted the Court's attention to Olsen's April 14, 2015 note that Plaintiff "is having some difficulty getting her daily routine stabilized."  (R. at 716; DE 11 at 6).  Furthermore, even if Olsen and Raval's medication reviews / follow ups and their other opinions are not directly inconsistent, Plaintiff's list of Olsen's and Raval's

records, followed by an assertion that the ALJ's inconsistency statement "is not correct" does not explain how the ALJ's mental RFC assessment fails to account for Plaintiff's mental impairments.  (*See* DE 11 at 6-7.)  This is Plaintiff's burden.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) ("during the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five.").

Also, Plaintiff challenges the ALJ's statement that Olsen's and Raval's opinions are "inconsistent with the claimant's lack of inpatient psychiatric hospitalizations."  (R. at 30, DE 11 at 7-8.)  Plaintiff notes that, on May 26, 2015, she "'called [the] hospital[s] *asking for* admission.'"  (*Id.* (citing R. at 817) (emphasis added).)  Thus, she points out to the Court that hospitalization "was certainly something that *was considered*."  (DE 11 at 8 (emphasis added).)  As it turns out, the ALJ expressly cited Plaintiff's consideration of "inpatient psychiatric hospitalizations" by providing a *general* citation to Olsen's May 2015 and November 2015 records.  (R. at 28, 817-819.)  These specifically indicate that Plaintiff "called the hospitals asking for admission[,]" "has been badly derailed by her symptoms with an attempt to hospitalize during this time[,]" and "has even called the hospital to see if she can be admitted."  (R. at 817-819.)  Nonetheless, even if Plaintiff herself *considered* or *asked for* hospitalization, she has not shown

that that ALJ's statement was inaccurate.  In other words, Plaintiff has not shown that there was an actual hospitalization.

Furthermore, the ALJ's opinion with respect to Plaintiff's mental health limitations are not solely based upon the lack of hospitalization.  At Step 3, the ALJ provided multiple citations for the conclusions that Plaintiff was only moderately limited with respect to interacting with others and adapting or managing herself.  (*See* R. at 22-23.)  Also, within the RFC discussion, the ALJ points out inconsistencies between Olsen's and Raval's opinions and:  **(a)** a "number of unremarkable mental status examinations from other treating providers ([R. at 584, 1118, 1261, 1357 & 1360])[;]" and, **(b)** Plaintiff's activities of daily living, for which the ALJ generally cited Plaintiff's function report (R. at 242-256). (R. at 30.)  Additionally, the ALJ notes that Plaintiff's mother, Pamela Schad, did not report that her daughter "had any trouble remembering, completing tasks, concentrating, understanding, following instructions, or getting along with others[.]"  (*Id.* at 31 (citing R. at 270-277 [Third Party Function Report]).)[5]

In sum, to the extent, if at all, Plaintiff's mental health limitations argument asks the Court to re-weigh the evidence, it cannot do so.  *Bradley*, 862 F.2d at 1227; *Felisky*, 35 F.3d at 1035.  Nor has Plaintiff convincingly argued that the ALJ

---

[5] Ms. Schad also reported that Plaintiff lives alone and is able to go out alone, pay bills, and handle a savings account.  (R. at 270, 273.)

improperly considered the mental health opinion evidence.  20 C.F.R. 404.1527(c), 416.927(c) ("How we weigh medical opinions.").  To the contrary, the ALJ's review of the mental health opinion evidence appears to have been quite thorough, and his assessment and application of it was well within the permissible range of reasoned outcomes.  *See Ashby v. Comm'r of Soc. Sec.*, No. 1:16-CV-11829, 2017 WL 9482460, at *9 (E.D. Mich. July 31, 2017) (Patti, M.J.), *report and recommendation adopted*, No. 16-CV-11829, 2017 WL 3725476 (E.D. Mich. Aug. 30, 2017) (Ludington, J.) ("The Court will neither re-weigh the evidence, ignore substantial evidence relied upon by the ALJ, nor second-guess an ALJ's findings which are well within the reasonable outcomes supported by the record as a whole.")

### 3.   Ambiguity

"The RFC assessment:  **[i]** is based primarily on **medical evidence** but may also include **observation or description** of limitations (*e.g.*, lay evidence, including the claimant's statement); **[ii]** describes **what an individual is able to do,** despite functional limitations resulting from a medically determinable impairment(s) and impairment-related symptoms; and **[iii]** is an **administrative determination** of an individual's capacity to perform work-related physical and mental activities."  *See* https://secure.ssa.gov/poms.nsf/lnx/0424510001 (last visited July 9, 2019) (emphases in original).

Plaintiff argues that the ALJ did not follow POMS DI 24510.001's requirements, as the RFC determination mixes use of permissive verbs, such as "can," "should," and "may."  (R. at 24, DE 11 at 8-9.)  Plaintiff contends that it is unclear from the RFC whether Plaintiff is "able to [do] that or not[.]"  (DE 11 at 9.)  However, as the Commissioner correctly states, the RFC "is not impermissibly ambiguous . . . ."  (DE 12 at 12.)  "[I]f any such doubt existed[,]" the ALJ elsewhere "stated that Plaintiff's impairments caused exertional, postural, environmental, and mental *limitations* [R. at 31], as opposed to *options*."  (*Id.* (emphases in original).)  The ALJ also made clear how the limitations account for Plaintiff's various conditions and "confirm that the ALJ based the RFC on what Plaintiff could do."  (R. at 31, DE 12 at 13.)  The Court does not see the claimed ambiguity.

### 4.    SSR 96-9p

Plaintiff's argument that the ALJ failed to consider SSR 96-9p quotes a portion of the ruling that concerns "[m]ental limitations or restrictions[.]"  (DE 11 at 9, SSR 96-9P, 1996 WL 374185, *9 (S.S.A. July 2, 1996).)  However, the title of SSR 96-9p concerns "implications of a residual functional capacity for less than a full range of sedentary work."  Thus, as the Commissioner correctly points out, SSR 96-9p "does not apply to the ALJ's decision that Plaintiff had an RFC for light work with additional limitations."  (DE 12 at 13.)

### 5. Absenteeism

Plaintiff claims to have had more than 33 medical appointments in 2016, *i.e.*, "nearly 3 appointments per month." (DE 11 at 9.) Relatedly, Plaintiff points to her testimony that she goes to "doctors and appointments . . . four to five days a week." (*Id.*, R. at 56.) Then, Plaintiff draws the conclusion that she should be found disabled, because "[m]ost [VEs] testify that 2-3 absences a month are not tolerated by employers and that claimants who would miss that much work would not be able to keep their employment . . . ." (DE 11 at 9.)

"Absenteeism due to the frequency of treatment is a relevant factor so long as the treatment is medically necessary and concerns the conditions on which the disability claim is founded." *Griffin v. Comm'r of Soc. Sec.*, No. 2:15-CV-13715, 2017 WL 991006, at *2 (E.D. Mich. Mar. 15, 2017) (Battani, J.). *See also Bensett v. Comm'r of Soc. Sec.*, No. 2:16-CV-11772, 2017 WL 3836098, at *4 (E.D. Mich. Aug. 3, 2017) (Patti, M.J.) ("Remand is required for further analysis of the impact of Plaintiff's hospital visits on her ability to engage in competitive employment."), *report and recommendation adopted*, No. 16-11772, 2017 WL 3779996 (E.D. Mich. Aug. 30, 2017) (Roberts, J.).

Here, the Court agrees with the Commissioner that Plaintiff "has identified no evidence showing that any such appointments were necessary and required her to miss an entire day of work." (DE 12 at 13.) To be sure, the Court notes the

October 17, 2016 statement that Plaintiff "is left with mental health issues that
include depression and anxiety that need to be *managed* on a daily basis and
frequently go out of control." (R. at 1273 (emphasis added).) Still, Plaintiff's
absenteeism argument makes a general, 217-page citation to the medical records.
(*See* DE 11 at 9, R. at 1165-1381.) And the word *managed* does not necessarily
mean "hands-on treatment" or "in-person doctor visits;" it can just as easily mean
or imply "managed with daily medication." As the Sixth Circuit has explained,
"[i]t is not this Court's role, or even the district court's role, to scour the record for
evidence and expert reasoning which the ALJ *might* have relied on and which
*could* support a finding of no-disability *if* the ALJ actually considered it." *Karger
v. Comm'r of Soc. Sec.*, 414 F. App'x 739, 754 (6th Cir. 2011) (emphases in
original).

### F.   Conclusion

Plaintiff has the burden of proof on her statements of error, each of which
challenges the ALJ's RFC assessment. *Walters*, 127 F.3d at 529. Plaintiff has not
shown legal error that would upend the ALJ's decision. For the foregoing reasons,
it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary
judgment (DE 11), **GRANT** Defendant's motion for summary judgment (DE 12),
and **AFFIRM** the Commissioner of Social Security's decision.

### III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated:  July 9, 2019                    s/*Anthony P. Patti*
                                        Anthony P. Patti
                                        UNITED STATES MAGISTRATE JUDGE